I4A7FLUC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

FLUENT, LLC,

              Plaintiff,

         v.                           18 Civ. 1290 (ALC)

XMISSION, LLC,

              Defendant.

------------------------------x
                                       New York, N.Y.
                                       April 10, 2018
                                       10:00 a.m.

Before:

                 HON. ANDREW L. CARTER

                                       District Judge

                      APPEARANCES

KLEIN MOYNIHAN TURCO LLP
     Attorneys for Plaintiff
BY:  NEIL ASNEN

GARBARINI FITZGERALD P.C.
     Attorneys for Defendant
BY:  RICHARD GARBARINI
```

1           (Case called)

2           (In open court)

3           MR. ASNEN:  Neil Asnen, Klein Moynihan Turco, for

4   plaintiff Fluent LLC.  Good morning, your Honor.

5           THE COURT:  Good morning.

6           MR. GARBARINI:  Richard Garbarini of Garbarini

7   Fitzgerald for the declaratory defendant Xmission.

8           THE COURT:  Good morning.  We're here for a premotion

9   conference.  I know the defendant wants to file a motion to

10  dismiss based on lack of personal jurisdiction, based on the

11  declaratory judgment itself, indicating also that there should

12  be an exception to the first file rule.

13          Before we get into the meat of any of that, just let

14  me get a sense from defendants here, plaintiffs in the Utah

15  action -- and you can stay seated if you like -- what exactly

16  is it you are seeking in the Utah action?  What are you looking

17  for?

18          MR. GARBARINI:  The Utah action was filed before this

19  was served, by the way, and it is for violations of what is

20  called the CAN-SPAM Act, and that is -- Xmission is -- let me

21  explain what Xmission is.  It's a Utah corporation that is an

22  ISP, an Internet Service Provider, and as such it hosts

23  websites and it hosts e-mails on its servers in Utah solely for

24  Utah citizens.  Fluent gathers massive amounts of real-time

25  information on people, and it does so through the use of false

1   and misleading spam e-mail that are sent through Xmission's
2   servers.  Xmission got thousands of complaints about this, so
3   Xmission sent a letter to Fluent, and the letter basically said
4   kindly call us, and if you don't call us, we're going to be
5   forced to file by a date certain.
6           Rather than make a phone call, the declaratory
7   plaintiff filed a declaratory judgment but didn't serve it.  It
8   filed it against multiple parties, first of all, parties who
9   have nothing to do with this.  It just basically took a guess
10  on the ISP's represented by the plaintiff's counsel in the Utah
11  action.
12          And basically the Utah action was then filed, and
13  after that the declaratory judgment was filed, and the Utah
14  action is just basically for violations for 10,714 e-mails
15  which were sent with false and misleading -- fraudulent e-mails
16  under the CAN-SPAM Act, which is presumed damages and statutory
17  damages for each and every single e-mail.
18          THE COURT:  OK.  And, again, I'm aware that the
19  plaintiffs here originally filed this action against two
20  defendants; they've dismissed one defendant.  The action here
21  is still only against the defendants here.  But let me get a
22  sense of -- let me rephrase my question.  How much money are
23  you looking for in Utah?  From your perspective, how much money
24  is that Utah case worth?
25          MR. GARBARINI:  It would be I assume in the hundreds

1     of thousands of dollars.
2              THE COURT:  And has there been prior litigation
3     between the parties here?
4              MR. GARBARINI:  No.  There has been a prior litigation
5     with Fluent over this exact same issue, but that was in
6     California.  But there has been no prior contact whatsoever on
7     any level between the declaratory defendant Xmission and the
8     declaratory plaintiff Fluent on any level except for the fact
9     that Fluent's agents used our servers to send out their false
10    and fraudulent e-mail.
11             THE COURT:  And were you counsel on the matter
12    involving Fluent and the other party in California?
13             MR. GARBARINI:  No, I was not.
14             THE COURT:  Do you know what happened with that case?
15             MR. GARBARINI:  It would be speculation, your Honor.
16             THE COURT:  All right.  Let me just say this.  Let me
17    just share what my concern is initially.
18             Before we start getting into some more expensive
19    litigation, I'm trying to figure out if there is a way that the
20    parties might be able to resolve this.  We have two actions
21    pending for essentially the same conduct.  I know one is a
22    declaratory judgment action here, but we have an action here,
23    we have an action in Utah.  It seems that this is going to be
24    resolved one way or the other perhaps somewhere, and I'm
25    wondering about the cost to the principals here.  The

1  defendants wish to file a motion to dismiss for lack of
2  personal jurisdiction.  The plaintiff wants jurisdictional
3  discovery.  It just seems that -- I'm trying to figure out if
4  there is a way to sort of streamline the expenses on some of
5  these ancillary matters so that either I or the court in Utah
6  can get to the heart of the matter here.  But let me hear more
7  from the defense counsel on that.  Those are what my concerns
8  are.
9           MR. GARBARINI:  Well, respectfully, your Honor, I
10 don't think there is any basis whatsoever for jurisdictional
11 discovery here.
12          The issue is for Xmission.  Their counsel is in Utah;
13 they are based solely in Utah; they are have no contact outside
14 of Utah; they are solely based in Utah; everything is
15 incorporated in Utah; principal place of business is in Utah;
16 all of their clients are in Utah.  They are leery of litigating
17 in New York.
18          So, I think the best course of action would be to
19 allow the Utah case to go forward.  And I don't think there is
20 any basis for jurisdictional discovery here.  I mean there has
21 been no contact.  I mean when you talk about seeking
22 jurisdiction with no probable basis, I mean this is the case.
23          THE COURT:  OK, let me hear from plaintiffs on this.
24          MR. ASNEN:  Well, to your Honor's point about how can
25 we efficiently resolve these issues, I might suggest that

1    defendants waive their jurisdictional objections and hear the
2    entire controversy in this case.
3              As your Honor probably doesn't know, Fluent made a
4    motion to dismiss on personal jurisdiction bases in the Utah
5    matter.  Rather than opposing that, Xmission made their own
6    motion to stay pending determination of this matter here.
7              There is absolutely no basis to have Fluent defend the
8    case in Utah.  Nevertheless, there are contacts between
9    Xmission and New York.  While nominally Xmission is an Internet
10   Service Provider, left unsaid is that a significant portion of
11   their business is being a professional CAN-SPAM plaintiff.
12             We laid out a litany of cases in our complaint
13   involving Xmission and CAN-SPAM suits, and what ultimately
14   always precedes that is a demand letter sent to the nominal
15   defendant.  Often times that defendant will be in New York.
16   So, it's our position that Xmission is soliciting contracts in
17   New York by sending out these settlement demand letters.  So, I
18   would believe that New York is the proper forum -- to the
19   extent that there is one -- to resolve the issues between the
20   parties.
21             THE COURT:  Just to be clear, your position is that
22   personal jurisdiction is proper based on Xmission sending these
23   demand letters in New York?
24             MR. ASNEN:  I believe there is a basis to explore
25   that, yes.

1    MR. GARBARINI:  Your Honor, may I briefly address
2 that?
3    THE COURT:  Sure.
4    MR. GARBARINI:  There was one prior matter between
5 Xmission and a New York entity, and that was in Utah in 2016.
6 Other than that, there has been no contact between any entity
7 in New York and Xmission.  And once again that was in Utah.
8    THE COURT:  OK.  Let me get a sense from plaintiff
9 what your view is in terms of -- well, never mind.  I will
10 withdraw that.  I was going to ask what your view is in terms
11 of what this case is worth, but I have a sense of what that is.
12    Let's do this:  I'm going to suggest that the parties
13 sit down amongst themselves and really think about settling
14 this matter, and I will give you a chance to do that, but I'll
15 also go ahead and set a schedule in case that doesn't work out.
16 I'm not particularly hopeful that it will work out, but you
17 never know.
18    But I will give the defendants permission to file
19 their motions to dismiss.  Regarding personal jurisdiction, I
20 will give the defendants leave to file that motion.  Depending
21 on what is in the motion and how fleshed out the motion is, I
22 will hear more from the plaintiffs later as to any need for
23 jurisdictional discovery.  It doesn't seem to me that there is
24 any need for jurisdictional discovery.  If in fact the
25 plaintiff's theory of jurisdiction is based on the defendants

1  here seeking settlements for these other actions in New York, I
2  don't think that there is any -- I don't think there is going
3  to be much of a dispute about that.  I am not sure there is
4  going to be any need for any discovery on that.  It just seems
5  that's just an issue of law that can be resolved.
6          Does plaintiff have any thoughts on that at this
7  point?
8          MR. ASNEN:  I would appreciate the opportunity to
9  brief that further, your Honor.
10         THE COURT:  All right.  So, let's do this:  Let's have
11 the defendant file all of their motions one month from now.
12 Which will be when, Tara?
13         DEPUTY COURT CLERK:  May 9.
14         THE COURT:  And let's have the plaintiffs respond
15 three weeks after that, I think on May the 30th.  Any reply
16 should be one week after that, on June 6.  And let's get a
17 joint status report from the parties on April 24, to see if
18 there is any way that the parties can resolve this action.
19 Just give me a status report letting me know whether or not the
20 parties have resolved either the action in full or whether
21 either side would consent to this matter being held either in
22 New York or Utah, because it does seem to me --
23         MR. GARBARINI:  Your Honor, could I respectfully
24 request that we have access to a magistrate judge perhaps to
25 assist us with a settlement conference?  I don't think the

1  parties in and of themselves are really in apace, but I think
2  with the use of a magistrate facilitating, it may be very
3  useful.
4     THE COURT:  OK.  Plaintiff, do you have any view on
5  that?
6     MR. ASNEN:  I think that's a reasonable request.
7     THE COURT:  OK.  Let's do this.  Let's push the
8  briefing back a little bit, and I will certainly refer this to
9  a magistrate judge for settlement, but I don't want to jam the
10  magistrate judge up and have them try to get you in and try to
11  settle this thing in two weeks.
12     So, let's push everything back.  Let's have a joint
13  status report now on May the 9th, and I will refer this matter
14  to the magistrate judge for potential settlement; and if the
15  matter does not settle, I will go ahead and give you the
16  briefing schedule.
17     Well, let's do this:  Let's get a joint status report
18  on May 9, and hopefully the matter will settle or the parties
19  will come to some sort of agreement; and, if not, on May 9 give
20  me a proposed briefing schedule, and I will sign off on that.
21     It may be by May 9 it hasn't settled but the parties
22  have made substantial progress and need a little more time to
23  settle things, and I don't want to get in the way of that.
24     So, let's just have a joint status report on May 9,
25  and I will refer this to the assigned magistrate judge, who is

I4A7FLUC

1   Judge Pitman.  And the parties should reach out to Judge Pitman
2   and set up a settlement conference at his leisure.
3            Anything else from plaintiffs here?
4            MR. ASNEN:  No, your Honor.  Thank you.
5            THE COURT:  Anything else from the defendant?
6            MR. GARBARINI:  No, your Honor.
7            THE COURT:  OK.  We are adjourned.
8            (Adjourned)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25